UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br> v.<br><br>SCHLOMO SHMUEL,<br><br>        Defendant. | Case No. 19-cr-03006-BAS-1<br><br>**ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE (ECF Nos. 50, 68)** |

On April 21, 2021, this Court sentenced Defendant to thirty-seven months in custody following his conviction for conspiracy to commit honest services mail fraud and health care fraud. (ECF No. 47.) Defendant now moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release. (ECF No. 50 ("Motion").) Counsel has also filed a Supplemental Motion for Release. (ECF No. 68 ("Supplemental Motion").) The Government opposes (ECF No. 64 ("Opposition")) with sealed exhibits (ECF No. 69 ("Exhibits")), and Defendant replies (ECF No. 70 ("Reply")). For the reasons stated below, the Court **DENIES** the Motions.

I. BACKGROUND

Defendant, a licensed medical doctor, owned and operated several orthopedic businesses that dispensed durable medical equipment ("DME") to patients, including hot-

cold packs.  (Presentence Report ("PSR") ¶ 22, ECF No. 14.)  Defendant paid $100 for each hot-cold pack referral received from co-conspirators to encourage physicians to refer their patients to his DME companies.  (PSR ¶ 23.)  From 2013–2015, Defendant paid $372,000 in referral fees, which he concealed as fake marketing fees.  (PSR ¶¶ 24–27.)  Defendant submitted claims for hot-cold packs to insurance companies, which were paid by federal and state government health care programs, totaling $3.5–$9.5 million.  (PSR ¶¶ 29–30.)

The Court sentenced Defendant to thirty-seven months in custody.  (ECF No. 47.)  On July 28, 2021, Defendant self-surrendered to begin serving this sentence.  (ECF No. 49.)  Thus, he has served approximately seven months of his thirty-seven month sentence.

Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because of his: (1) risk of contracting COVID-19 combined with his medical conditions of type-2 diabetes, high cholesterol, and asthma; (2) lack of medical treatment, specifically for a cut he received after falling off a top bunk; (3) inability to get into the RDAP program; and (4) need to be at home to help care for his sons.  (Motion, Supplemental Motion.)

A review of Defendant's medical records demonstrates that he is 56 years old and has been fully vaccinated against COVID-19, including a booster shot.  (Exhibits, B pg. 22.)  He has also repeatedly tested negative for COVID-19, most recently on February 4, 2022.  (*Id.*, pgs. 16–20.)  Although he has been diagnosed with type-2 diabetes, this has been well-controlled with medication.  (Exhibits, A pgs. 21, 65.)  The records also reflect that he suffered "a small skin tear" after a fall from an upper bunk, which was "not actively bleeding" and was "sore, but tolerable."  (Supplemental Motion, Exh. 2 pg. 5.)  The skin tear was "without drainage, heat, redness or swelling."  (*Id*. pg. 27.)  Defendant was provided an adhesive dressing for the tear.  (*Id*.)

An affidavit from Defendant's wife details that their 25-year-old son, who is a first-year law student at Emory University, but is autistic, has struggled with the absence of his

father from the home. (Supplemental Motion, Exh. 6.) She also struggles to care for their minor son alone, especially since she would like to travel to see her ill brother and help care for her elderly mother. (*Id.*)

Records show Defendant has exhausted his administrative remedies by applying for compassionate release from the Warden at FCI Terminal Island, where he is being housed, without response. (Supplemental Motion, Exhibit 1.) More than 30 days have elapsed since these requests were made. *See* 18 U.S.C. § 3582(c)(1)(A)(i) (providing the court may consider a defendant's motion for compassionate release if he requests release from the warden of his facility and receives no response within 30 days).

## II.   ANALYSIS

Once a defendant exhausts his administrative remedies, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

Unfortunately, Congress provided no statutory definition of "extraordinary and compelling reasons" and instead delegated that responsibility to the U.S. Sentencing Commission. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021). Due to vacancies in the Sentencing Commission, the Commission has been unable to update its definition of "extraordinary and compelling reasons" following passage of the First Step Act that amended § 3582(c)(1)(A). *Id.* Nonetheless, the Sentencing Commission's original policy statements, although not binding, may inform the district court's decision as to whether certain conditions are extraordinary and compelling. *Id.*

In the Application Notes, the Sentencing Commission gives examples of extraordinary and compelling reasons including that the defendant is:

(I)   suffering from a serious physical or medical condition;

   (II)  suffering from a serious functional or cognitive impairment; or

   (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13(1)(A), Application Note 1(A)(ii).

  Additionally, the Application Notes indicate that Family Circumstances could be grounds for compassionate release where there is:

  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children[; or]

  (ii) The incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse . . . .

U.S.S.G. § 1B1.13(1)(A), Application Note 1(C).

### A. Risk of COVID-19

  Defendant first argues that compassionate release is warranted because his medical conditions create a greater risk were he to contract COVID-19 and the precautions exercised by Terminal Island FCI are insufficient to protect the inmates from the virus.

  Since vaccinations have become widespread in the Bureau of Prisons, courts in the Ninth Circuit have consistently refused compassionate release requests based on the threat of COVID-19 from inmates or detainees who have been fully vaccinated. *United States v. Cobarruvias-Pete*, No. 18-cr-4151-CAB, 2021 WL 4819301, at *1 (S.D. Cal. Oct. 15, 2021) (citing cases); *see also United States v. Cortez*, No. CR-18-858-01-PHX-SPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) ("The court cannot conclude, particularly in light of his vaccination, that defendant's current exposure to COVID-19 presents 'extraordinary and compelling reasons.'"); *United States v. Upshaw*, No. 1:14-cr-256, 2021 WL 2417012, at *2 (E.D. Cal. June 14, 2021) (citing cases) ("[C]ourts in this circuit and others have recognized that the widespread availability of COVID-19 vaccines within BOP facilities has significantly diminished the risk posed to federal prisoners by the virus and

in turn lessened the degree to which the risks posed by COVID-19 may tip the scale in favor of compassionate release in cases where prisoners suffer from chronic medical conditions."); *United States v. Hall*, No. 3:18-cr-499-BR, 2021 WL 5566539, at *3 (D. Or. Nov. 29, 2021) (citing cases) (noting "other district courts in the Ninth Circuit and other judges in this District have . . . concluded inmates who have been fully vaccinated . . . have not satisfied the extraordinary and compelling standard" even if they suffer from medical conditions that make them more susceptible upon contracting COVID-19).

Defendant's full vaccination status, coupled with a recent booster shot, negate his claim of risk based on COVID-19. This conclusion is supported by the fact that Defendant has consistently tested negative for the virus while in custody, most recently on February 4, 2022. (Opposition, Exh. B, pgs. 16-20.) Additionally, the most recent report from the Bureau of Prisons shows no inmates positive for COVID-19 at Terminal Island FCI and only one positive staff member. *See* BOP, COVID-19 Cases, https://www.bop.gov/coronavirus (last visited Mar. 2, 2022).[1] Therefore, despite Defendant's diabetes and high cholesterol, both of which have been well-controlled while in custody, the Court finds that the risk of COVID-19 to this fully vaccinated individual is not sufficient to warrant compassionate release.[2]

**B.  Insufficient Medical Treatment**

Defendant next argues that he has received insufficient medical treatment while in custody. These claims are belied by the record. Although Defendant claims his fall from the top bunk resulted in a wound that became infected after he was provided insufficient medical care, the medical records submitted do not support that claim. Nor does Defendant provide any other evidence that would support this claim. The medical records show a

---

[1] Although Defendant claims these numbers are under-inclusive, he provides no evidence that there is currently a problem with an outbreak of COVID-19 at Terminal Island.

[2] Although Defendant, in his Reply, argues that he has no idea if his blood sugar, cholesterol, and blood pressure are controlled in custody, he did receive a full blood chemistry panel while in custody, which showed his blood sugar and cholesterol were both within normal ranges. (ECF No. 69, pg. 65.) Additionally, defendant has consistently shown blood pressure readings in a normal range. (ECF No. 69, pg. 44.)

small skin tear, which never became infected and was treated with an adhesive dressing despite the lack of bleeding.

Furthermore, the medical records reflect that Defendant has received medication for his diabetes and high cholesterol—both of which appear to be successfully treating his conditions. (ECF No. 69, pgs. 15, 44, 65.) Finally, Defendant submits insufficient evidence that he has coronary problems that warrant medical treatment he is not receiving while in custody. Therefore, the Court denies compassionate release on this ground.

### C. Failure to Get RDAP Treatment

This Court agrees with those courts that have concluded that a defendant's failure to access the RDAP program, while regrettable, is an insufficient reason to warrant compassionate release. *See United States v. Moore*, No. 1:19-cr-63-DCN, 2021 WL 2417722, at *3 (D. Idaho, June 11, 2021); *United States v. Casas*, No. 3:10-cr-3045-BTM, 2021 WL 5359363, at *5 (S.D. Cal., Nov. 17, 2021).

### D. Need to Care for Sons

Although family circumstances may warrant compassionate release, Defendant has failed to demonstrate that his circumstances are sufficient to rise to the level of extraordinary and compelling reasons for release. He argues that his adult son, who is attending law school, but has autistic symptoms, is full of anxiety because of his absence. Additionally, his wife is left caring for their minor son alone and is, thus, unable to help her ill brother and her elderly mother. Unfortunately, family members often are the most hurt when a parent or spouse commits a crime. The circumstances outlined by Defendant's spouse in her affidavit do not warrant Defendant's compassionate release.

### E. Section 3553(a) Factors

Even if Defendant had demonstrated extraordinary and compelling reasons for his release (he has not), the Court must still consider the factors set forth in Section 3553(a) to determine whether release is warranted. In this case, the Court finds those factors support denying the request. Defendant has only served seven months of his thirty-seven-month sentence. This is insufficient for deterrence, as well as for the need for just punishment

and to avoid unwarranted disparities.  Therefore, the Court further finds the Section 3553(a) factors militate against compassionate release.

### III.   CONCLUSION

Defendant's Motions to reduce his sentence pursuant to 19 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 50, 68) are **DENIED**.

**IT IS SO ORDERED.**

**DATED: March 2, 2022**

Hon. Cynthia Bashant
United States District Judge